**SECOND DIVISION**
**BARNES, P. J.,**
**DOYLE, P. J., and SENIOR JUDGE FULLER**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 30, 2026

# In the Court of Appeals of Georgia

A26A0313. MIGNOTT v. SEGAL et al.

FULLER, Senior Judge.

In this civil action, attorney Marsha W. Mignott sued the defendants, Debra A. Segal and Doreen A. Mitchell, for tortious interference with contractual and business relations and defamation allegedly arising out of the defendants' involvement in a disciplinary grievance filed against her. Following the trial court's grant of summary judgment to the defendants, Mignott appeals pro se, challenging that ruling as well as numerous procedural, jurisdictional, and discovery rulings made throughout the course of the litigation. For the reasons set forth below, we affirm.

The many and varied claims of error require us to set out the underlying facts and procedure in some detail.[1] In September 2016, Patrick Sinclair consulted with Mignott regarding an immigration matter. Sinclair asked Mignott about obtaining permanent legal resident status for his potential bride, a non-United States citizen, and her child. Mignott made handwritten notes on the consultation form, which she provided to Sinclair. Doreen Mitchell, Sinclair's potential bride, was at the meeting, but she was not introduced to Mignott as such, and she did not speak. Ultimately, neither Sinclair nor Mitchell ever retained Mignott for the immigration matter.

Sinclair and Mitchell subsequently married. However, in early 2018, Sinclair retained Mignott to represent him in their divorce action and a temporary protective order ("TPO") matter against Mitchell. Debra Segal, a volunteer with the Atlanta Volunteer Lawyers Foundation ("AVLF"), represented Mitchell in the TPO matter. After learning about the 2016 immigration consultation, Segal called Paula Frederick, then-General Counsel for the State Bar of Georgia, who opined that Mignott had a

---

[1] Because this opinion addresses multiple claims involving different standards of review, we provide merely an overview at this point, construing the evidence with all reasonable conclusions and inferences drawn from it in the light most favorable to Mignott. See *Fortson v. Brown*, 302 Ga. App. 89, 91(3) (690 SE2d 239) (2010). Where appropriate below, we address the facts in greater detail under the applicable standards of review.

conflict of interest. Segal raised the issue of a potential conflict of interest at a March 2018 TPO hearing. The court held a bench conference at which Segal presented a portion of the 2016 consultation form provided to her by Mitchell, asserting that Mignott had a conflict of interest because she was Mitchell's immigration attorney. Although Mignott denied consulting with Mitchell, the court indicated that it would hold an evidentiary hearing on the matter before moving forward. Sinclair told Mignott that he could not afford the expense of fighting a disqualification hearing in addition to his other legal fees and terminated Mignott's services in the TPO case.

Mignott continued to represent Sinclair in the divorce proceedings. In September 2018, Mitchell's divorce attorney considered filing a motion to disqualify Mignott from the divorce case, even obtaining an affidavit from Segal in support of the motion, although she never filed the motion to disqualify or the affidavit. However, when the divorce attorney asked Mignott to voluntarily withdraw, Mignott responded by calling Segal a "liar" and stating that she would "expose" her.

In December 2018, Mitchell filed a handwritten grievance against Mignott with the State Bar and submitted supporting documents, including Segal's affidavit, and a portion of the 2016 client consultation form. Mignott thereafter sought out an arrest

warrant for Mitchell, claiming that she had "whited out" Mignott's notes regarding a "payment plan" on the consultation form to falsely make it look like Mignott was her retained immigration attorney.[2]

The State Bar filed a complaint against Mignott in the Supreme Court of Georgia in November 2020, alleging that her conduct violated the Georgia Rules of Professional Conduct ("GRPC"). In June 2021, Mignott's attorney in the disciplinary action attempted to depose Segal. Segal's attorney in that matter, Adria Perez, e-mailed Mignott's counsel regarding the deposition logistics, stating that she wanted to meet at a "secure, weapon-free location" because, Perez claimed, Mignott had made "threats" against Segal and had previously been "arrested and charged with . . . attempting to bring a concealed weapon into the courthouse" while "on her way to a hearing for which she had subpoenaed [Segal] as her witness."

Days later, Mignott filed this civil action against Segal and Mitchell in Clayton County Superior Court. She asserted a claim of tortious interference with contractual relations against both Segal and Mitchell, alleging that Segal "maliciously conspired with Mitchell and [AVLF] agents . . . regarding the false allegations and the forged

---

[2] Mitchell was later indicted for first-degree forgery regarding the document.

document utilized by Mitchell with the State Bar . . . to prevent [Mignott] from continuing her contractual relationship with . . . Sinclair," and a claim of defamation solely against Segal regarding the allegation in Perez's e-mail that Mignott had threatened Segal. The case was later transferred to DeKalb County due to improper venue.

Mignott subsequently amended her complaint, seeking to add AVLF as a defendant, but the trial court ultimately dismissed AVLF from the action. Mignott also moved for leave to file a second amended complaint to add Frederick and Perez as defendants, which she later withdrew. Following a May 2022 motions hearing, Mignott filed a motion to recuse the judge, which the trial court denied. The court thereafter stayed the civil action pending resolution of Mignott's disciplinary proceedings.

In October 2023, the Supreme Court dismissed the disciplinary matter against Mignott, concluding that she did not violate the rules of professional conduct because Mitchell was merely a prospective client, a relationship to which the rules did not apply at that time. See *In the Matter of Mignott*, 317 Ga. 764 (893 SE2d 891) (2023). The trial court lifted the stay in the current action in June 2024. Following a period

of discovery disputes, Segal and Mitchell moved for summary judgment. The trial court granted the motion, and this appeal followed.[3]

1. *Mignott's brief.*

Before turning to the merits, we must address Mignott's rambling, often conclusory brief, which contains multiple, flagrant violations of this Court's rules that severely hamper our review of her claims. The sheer volume of material — a nearly 5,000-page record and thirteen claims of error concerning at least eight distinct orders or rulings — demands meticulous compliance with our rules, which are designed to "aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court." *Bennett v. Quick*, 305 Ga. App. 415, 416 (699 SE2d 539) (2010) (quotation marks omitted). Instead, the brief utterly fails to identify how each enumerated error was preserved for appellate review, in some instances even failing to identify the specific ruling challenged. See Ga. Ct. App. R. 25(a)(5) (requiring an appellant to identify "how each enumerated error was preserved for review"). See also Ga. Ct. App. R. 25(a)(4) (requiring the enumeration of errors to

---

[3] Mignott initially filed a discretionary application, which we granted because she had the right to a direct appeal. See OCGA § 5-6-35(j); see also OCGA § 9-11-56(h).

"identify separately and concisely each allegedly erroneous ruling the appellant relies on as a basis for reversal").

Most glaringly, Mignott omits any recitation of the material facts relevant to the appeal, replacing this critical requirement with a mere procedural history and the incorporation of some facts in the argument section of her brief. See Ga. Ct. App. R. 25(a)(5) (requiring an appellant's brief to include "[a] statement of the case that sets out the material facts relevant to the appeal"). But "[i]t is insufficient and a violation of this Court's rules to omit a statement of facts and only reference the pertinent facts in the argument section." *Hughes v. State*, 365 Ga. App. 448, 450(1) n.1 (878 SE2d 791) (2022). This deficiency is particularly egregious because Mignott asks this Court to reverse a grant of summary judgment. Our de novo review requires us to view the facts in the nonmovant's favor to determine whether a genuine issue of material fact remains to be tried. See *Fortson v. Brown*, 302 Ga. App. 89, 91(3) (690 SE2d 239) (2010). By failing to provide a statement of facts, Mignott essentially seeks "to change [our] role from disinterested decision-maker to appellate advocate reviewing a trial record for error." *Rowland v. State*, 264 Ga. 872, 874(1) (452 SE2d 756) (1995), overruled on other grounds by *Cook v. State*, 313 Ga. 471, 474 (870 SE2d 758) (2022).

We admonish Mignott that "[i]t is not this Court's job to cull the record on behalf of [an] [a]ppellant to find alleged errors, as appellate judges are not like pigs, hunting for truffles buried in briefs." *Henderson v. State*, 304 Ga. 733, 739(4) (822 SE2d 228) (2018) (citation modified).

Although Mignott is representing herself, pro se status does not relieve a party of the obligation to comply with the substantive and procedural requirements of the law. "[C]ompliance with our rules is not discretionary, but mandatory." *Warren v. State*, 232 Ga. App. 488, 488(1) (502 SE2d 336) (1998). Furthermore, in this case, we granted Mignott's motion to file an amended brief, which she asked to do specifically to "correct technical errors" and "include additional citations to the record," and she assured this Court that the amended brief would "comply with all requirements" of Rule 25. Yet, she failed to cure these glaring deficiencies. Additionally, we note this reflects a continuing pattern of behavior, as we recently admonished her for a nonconforming brief in *Callahan v. State*, A26A0028, slip op. at 3–5(1) (Ga. App. Apr. 8, 2026) (unpublished).

Crucially, Mignott's repeated, willful violations of our rules may subject her to contempt, including revocation of her admission to practice before this Court. See Ga.

Ct. App. R. 7(c)–(d). Nevertheless, we will review her claims to the extent we can discern them, but she will be granted no relief if we misconstrue her nonconforming brief. See *Pinkerton v. Nichols*, 375 Ga. App. 245, 246(1) (915 SE2d 696) (2025).[4]

2. *Threshold issues — recusal and venue.*

(a) We first address Mignott's threshold argument that the trial court erred by denying her motion to recuse without assigning another judge to consider the motion. We discern no error.

On May 2, 2022, the trial court held a hybrid hearing on several pending motions, with Mignott appearing in the courtroom, while the judge and opposing counsel appeared virtually. During the hearing, the court announced its ruling on AVLF's motion to dismiss before Mignott had returned to the courtroom from a recess. When Mignott brought this to the court's attention, the judge explained that she thought Mignott was present when the ruling was issued and again announced the ruling. Additionally, the court allowed the attorney representing Perez to speak over Mignott's objection that the attorney had not yet filed an entry of appearance. Mignott moved to recuse the judge based on these rulings, and the court denied the motion.

---

[4] For ease of discussion, we address Mignott's arguments out of the order in which she raises them.

Pursuant to Uniform Superior Court Rule ("USCR") 25.3, a judge presented with a motion to recuse and accompanying affidavit must "temporarily cease to act upon the merits of the matter and shall immediately determine the timeliness of the motion and the legal sufficiency of the affidavit, and make a determination as to whether, assuming any of the facts alleged in the affidavit to be true, recusal would be warranted." If it is found that recusal would be authorized if some or all of the facts in the affidavit are true, "another judge shall be assigned to hear the motion to recuse." USCR 25.3. The affidavit must "clearly state the facts and reasons for the belief that bias or prejudice exists." USCR 25.2. Among other things, the affidavit must specify "circumstances of extra-judicial conduct or statements" that demonstrate prejudice against the party moving for recusal or "bias in favor of an adverse party." Id. Whether the threshold criteria have been met is a question of law that we review de novo. See *Mondy v. Magnolia Advanced Materials, Inc.*, 303 Ga. 764, 766(2) (815 SE2d 70) (2018).

Here, Mignott presented an affidavit in support of her motion to recuse in which she (i) alleged that the court "engaged in ex-parte communication" by ruling on AVLF's motion before she returned to the courtroom, and (ii) asserted her

"opinion and belief" that the court's rulings demonstrated a "quid pro quo" to curry favor with Perez's attorney — who co-chaired the state's Judicial Nominating Commission — to secure a future Supreme Court appointment. These allegations are legally insufficient to warrant recusal. First, even assuming that an ex parte communication occurred, it must be assessed under Code of Judicial Conduct Rule 2.11 to determine if the judge's impartiality might reasonably be questioned. Mignott's bare, conclusory, hyperbolic assertion that the judge's ruling outside her presence constitutes "overwhelming evidence of . . . bias" is woefully insufficient to meet this burden. See generally *Brennan v. State*, 313 Ga. 345, 355(2) (868 SE2d 782) (2022) (explaining that "speculation is insufficient to show that the trial judge was biased or that his impartiality could reasonably be questioned" such that recusal is warranted). Second, adverse "factual and legal rulings . . . are not a proper basis for recusal." *Yntema v. Smith*, 371 Ga. App. 19, 26(3) (899 SE2d 543) (2024). Third, contrary to Mignott's assertion that the judge was required to assume that her spurious and plainly speculative "quid pro quo" allegations were true, USCR 25.2 dictates that "[a]llegations consisting of bare conclusions and opinions" cannot support a recusal motion and do not warrant further proceedings. See *Gray v. Manis*, 282 Ga. 336,

11

336(1) (647 SE2d 588) (2007) ("An affidavit is insufficient if it contains mere conclusions rather than showing facts indicating the judge's personal (rather than judicial) bias." (quotation marks omitted)). Because the affidavit relied exclusively on the judge's rulings, which are not extra-judicial, and unsupported, bald speculation and hyperbole, the motion was properly denied without assigning it to another judge. See *Gray*, 282 Ga. at 336(1)*; Yntema*, 371 Ga. App. at 26(3).

(b) Regarding venue, Mignott asserts that the trial court erred by transferring the case to DeKalb County without considering the factors enumerated in OCGA § 9-10-31.1, the forum non conveniens statute. However, the case was transferred under OCGA § 9-11-12(b)(3) for improper venue — not forum non conveniens. Because Mignott fails to present any argument or authority regarding the trial court's actual ruling, this misplaced claim presents nothing for our review. See *Ultra Group of Cos., Inc. v. Alli*, 352 Ga. App. 71, 76(1) (833 SE2d 751) (2019).

3. *Parties*.

(a) Mignott contends that the trial court erred by dismissing AVLF. We discern no error.

Mignott amended her complaint to add AVLF as a defendant without first seeking leave of court. See *Benedek v. Bd. of Regents of the Univ. System of Ga.*, 332 Ga. App. 573, 575(1)(b) (774 SE2d 150) (2015) (explaining that OCGA § 9-11-21 "allows the dropping and adding of parties only by order of the court" (quotation marks omitted)). On October 5, 2021, she attempted to serve AVLF by delivering the amended complaint and an unsigned summons from Clayton County — where the case was no longer pending. It was not until October 14, 2021 — nine days *after* her attempted service — that Mignott actually filed her motion for leave to add AVLF as a party, which the trial court subsequently granted. AVLF then filed a motion to dismiss due to an invalid summons and premature service, which the trial court granted based on lack of personal jurisdiction, insufficiency of process, and insufficiency of service of process. See OCGA § 9-11-12(b)(2), (4)–(5).

On appeal, Mignott raises a litany of arguments challenging the trial court's rulings.[5] As best as we can discern, she contends that service of an unsigned summons

---

[5] The trial court's order does not identify specific facts in support of each ground for dismissal. Nevertheless, we note that a defense of "insufficiency of process challenges irregularities in the contents of the summons alone, whereas insufficient service of process deals with the manner of delivery of summons and complaint." *Sampson v. Ga. Dep't of Juvenile Justice*, 328 Ga. App. 733, 738–39(2) (760 SE2d 203) (2014) (citation modified) (physical precedent only).

from the wrong court is merely "inadvertent mislabeling" and insists this did not warrant dismissal because the original summons — from a court that no longer had jurisdiction and which did not name AVLF as a defendant — was signed by *a* clerk, thereby meeting the requirement that a summons "shall be signed by the clerk." OCGA § 9-11-4(b). She also argues that AVLF had proper notice of the suit because its registered agent was copied on administrative e-mails with the trial court's staff attorney.

We need not decipher the merits of Mignott's claims, however, because she fails to address an independent ground for dismissal: insufficiency of service of process based on AVLF's underlying argument that the service attempt was legally void because she attempted service nine days before AVLF was added as a party. See *Stamps v. Bank S., NA*, 221 Ga. App. 406, 409(1) (471 SE2d 323) (1996) (noting that a defendant "obviously did not and could not acknowledge receiving service of the summons[,] which had not yet issued"). Her failure to challenge this alternative basis for the judgment requires us to affirm. See *Brown v. Fokes Props. 2002, Inc.*, 283 Ga. 231, 233(2) (657 SE2d 820) (2008) ("Grounds that are not attacked as erroneous will not be considered on appeal and are presumed to be binding and correct. An

14

appellant's failure to attack alternative bases for a judgment results in the affirmance of that judgment.").

(b) We need not address Mignott's separate claim that the trial court erred by denying her motion to add Frederick and Perez as parties because she withdrew that motion before the trial court entered its order. See *Mimms v. Sisk Decorating Co.,* 156 Ga. App. 572, 574(1) (275 SE2d 148) (1980) ("It is unnecessary to rule on a motion which has been withdrawn or the issues of which have become moot." (quotation marks omitted)).

4. *Case management and discovery.*

(a) Turning to the trial court's case management and hearing procedures, Mignott contends that the court erred by permitting Perez's attorney to speak during the May 2, 2022 motions hearing because the attorney failed to file an entry of appearance before the hearing. This claim is baseless. The plain language of USCR 4.2 expressly states that counsel's "[f]ailure to timely file" an entry of appearance "shall not prohibit the appearance and representation by said counsel." Moreover, the attorney substantially complied with USCR 4.2 by orally stating to the court that he

15

was appearing as Perez's attorney. See *Ford v. Hanna*, 293 Ga. App. 863, 865(1) (668 SE2d 271) (2008).

(b) Mignott also challenges the trial court's management of the case's timeline, arguing that the court erred by staying the case until the disciplinary matter was resolved and then failing to lift the stay in a timely manner. Pretermitting error, this claim is moot because the trial court lifted the stay before Mignott appealed to this Court. See *U-Haul Co. of Ariz. v. Rutland*, 348 Ga. App. 738, 752(2)(b) (824 SE2d 644) (2019) (concluding that a challenge to a stay was moot where the stay period had passed before the case was docketed on appeal).

(c) Regarding discovery, Mignott argues that the court erred by quashing several witness subpoenas and excluding evidence.[6] We disagree.

In June 2024, Mignott issued subpoenas duces tecum to several State Bar employees, including Frederick, broadly demanding the production of internal State Bar communications, correspondence with the defendants, and records specifically

---

[6] Regarding this claim of error, Mignott lists five non-party witnesses for whom she issued subpoenas, although she provides specific arguments regarding only three: Frederick, Adrienne Nash, and Jonathan Hewett. Accordingly, this claim is deemed abandoned except as to those three witnesses. See Ga. Ct. App. R. 25(d)(1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

concerning the disciplinary grievance and the resulting conflict-of-interest investigation. The trial court subsequently granted the State Bar employees' joint motion to quash, concluding that the subpoenas were improper because discovery had closed in January 2022 and the requested communications were "absolutely privileged" under Rule 4-221.3 of the GRPC.[7]

On appeal, Mignott contends that the subpoenaed testimony is relevant, but she entirely fails to address the court's privilege ruling. See generally *Ortho Sport & Spine Physicians, LLC v. City of Duluth*, 352 Ga. App. 215, 216(2) (834 SE2d 315) (2019) (distinguishing relevant and privileged information in terms of requested discovery). Furthermore, Mignott offers no explanation of what specific, admissible testimony she expected to obtain from the witnesses, and does not provide any cogent legal argument demonstrating how their testimony would have altered the summary judgment ruling. "[T]his Court will not reverse cases based on speculation." *Joiner-Carosi v. Adekoya*, 357 Ga. App. 388, 392(2) (850 SE2d 823) (2020) (citation modified). Because Mignott has not established how the alleged error affected the outcome, this enumeration

---

[7] Rule 4-221.3 provides that pleadings and oral or written statements made by complainants, witnesses, respondents, and their counsel during any State Bar disciplinary proceeding are "absolutely privileged" and can "under no circumstances form the basis for a right of action."

presents no basis for reversal. See id. ("Pretermitting whether the trial court erred by quashing the subpoenas, on appeal, the burden is on the appellant to establish harm, as well as error.").

5. *Procedural challenges to summary judgment.*

(a) Having resolved Mignott's procedural and discovery-related challenges, we turn to her enumerations regarding the summary judgment ruling. First, Mignott contends that the trial court erred by considering the defendants' January 2025 motion for summary judgment because, she claims, it was untimely filed several years after discovery had closed in January 2022, and after the case had been placed on a trial calendar in December 2024. We discern no error.

It is true that motions for summary judgment must be filed "sufficiently early so as not to delay the trial" and that "[n]o trial shall be continued by reason of the delayed filing of a motion for summary judgment." USCR 6.6. However, this case was put on a general trial calendar where it was "on call" for over 30 trial weeks between January and December 2025. While the court had ordered the parties to appear on January 3, 2025, "to discuss potential trial dates," the record does not indicate that a particular trial date was ever set. Under these circumstances, there is no indication

that the filing of the motion for summary judgment delayed a trial, and we therefore find no error in the court's consideration of the motion. See *Costa v. Hamilton State Bank*, 341 Ga. App. 777, 778(1) (802 SE2d 80) (2017) (finding that the trial court did not abuse its discretion by ruling on a summary judgment motion filed after the case had been put on a general trial calendar but not scheduled for a particular day).

(b) Mignott also argues that the trial court procedurally erred by granting the motion for summary judgment before ruling on all pending motions. However, the only pending motion Mignott identifies in her brief is a motion to strike Segal's filing of a demonstrative exhibit that was inadvertently omitted from Segal's summary judgment reply brief, and that contained no new evidence. Mignott makes no argument as to how the court's failure to rule on the motion affected the entry of summary judgment and we do not see how the demonstrative exhibit impacted the court's ruling. Thus, any error by the trial court in failing to rule on the motion to strike before granting summary judgment was harmless. See *Bourff v. Green Tree Servicing, LLC*, 321 Ga. App. 320, 325(6) (741 SE2d 175) (2013) (declining to reverse the grant of summary judgment based on an alleged error in striking contested filings because the documents, even if considered, "failed to alter the result of our

19

conclusion that the entry of summary judgment . . . was proper," thus rendering any error harmless (quotation marks omitted)) (physical precedent only).

6. *Substantive merits of summary judgment.*

(a) We now address the substantive legal merits of the summary judgment order. On appeal, Mignott broadly asserts that the trial court erred by finding that Segal and Mitchell's acts were privileged, arguing that their conduct before the filing of the grievance falls under the crime-fraud exception to the attorney-client privilege under OCGA § 24-5-501(a)(2). Although the trial court made several different rulings regarding privilege, Mignott fails to specifically identify the exact ruling(s) she is challenging. Nevertheless, the record shows that the court determined that Segal's conduct — including her inquiry to the State Bar, drafting an affidavit for a potential motion to disqualify, and statements regarding Mignott's "threats" — was privileged under OCGA §§ 51-5-7 and 51-5-8,[8] and that Mitchell's grievance and communication with the State Bar were "absolutely privileged" under GRPC Rule 4-221.3.

---

[8] OCGA § 51-5-7 establishes privileges for certain communications, such as statements made in good faith to perform a legal or moral private duty or protect the speaker's own interest and comments fairly made by counsel regarding the circumstances of a case in which she is involved. OCGA § 51-5-8 establishes privileges for charges, allegations, and averments contained in legal pleadings.

20

Mignott fails to explain how the attorney-client privilege is relevant to the trial court's privilege rulings. Moreover, to the extent she is attempting to argue that the crime-fraud exception to the attorney-client privilege applies to the other, distinct privileges underlying the trial court's rulings, she fails to cite any relevant legal authority or provide substantive argument in that regard. See *Guilford v. Marriott Int'l, Inc.*, 296 Ga. App. 503, 505 (675 SE2d 247) (2009) (noting that legal argument "requires, at a minimum, a discussion of the appropriate law as applied to the relevant facts" (citation modified)). Consequently, this claim presents nothing for our review. See *Ultra Group of Cos., Inc.*, 352 Ga. App. at 76(1). See also Ga. Ct. App. R. 25(d)(1).

(b) Next, Mignott argues that the trial court erred by finding that her defamation claim fails as a matter of law.[9] We disagree.

A defamation claim has four elements: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Grace v. Lowery*, 359 Ga.

---

[9] Although Mignott asserts that the court erred in granting summary judgment on her "claims," her argument in this regard exclusively concerns the defamation claim.

App. 881, 883 (860 SE2d 159) (2021) (quotation marks omitted). Furthermore, "[t]he defamatory statement must be published, and a plaintiff cannot prove publication without introducing evidence of the specific statement used in an allegedly defamatory communication." Id. (citation modified).

Here, Mignott claims that the evidence establishes defamation because "Segal published to a third-party a false defamatory statement alleging that [Mignott] committed the crime of terroristic threats." (Emphasis omitted.) However, as the trial court noted below, the only evidence of this alleged statement is an e-mail from Perez to Mignott's attorney stating, "[Y]our client did make threats against my client." Because Mignott failed to identify a specific statement made by Segal herself — the only defendant named in this claim — Mignott cannot establish defamation. See *Grace*, 359 Ga. App. at 883 (explaining that defamation claims fail where the plaintiff cannot identify "any particular words or statements" made by the defendant); *Shannon v. Off. Max N. Am., Inc.*, 291 Ga. App. 834, 837(3)(c) (662 SE2d 885) (2008) (finding no triable issue of fact for a defamation claim where the record lacked evidence of the substance of the defendant's conversation with a third party). See generally *Cowart v. Widener*, 287 Ga. 622, 623 (697 SE2d 779) (2010) (explaining that

22

summary judgment is proper when a defendant establishes from the record an absence of evidence to support the plaintiff's claims).

(c) We next address Mignott's tortious interference claim. In this regard, she asserts that the trial court erred by finding the forged document immaterial, arguing that Segal and Mitchell used it to initiate the grievance as a "last-ditch effort" to interfere with her client relationship and remove her from the divorce case. However, even assuming the document was material, submissions in State Bar disciplinary proceedings are shielded by absolute privilege and "under no circumstances form the basis for a right of action." See GRPC Rule 4-221.3. See also OCGA § 51-5-8; *Hagemann v. Berkman Wynhaven Assocs.*, 290 Ga. App. 677, 682 (660 SE2d 449) (2008) (holding that a tortious interference claim "cannot be predicated upon an allegedly improper filing of a lawsuit," even where the supporting verifications were allegedly false (quotation marks omitted)). Because we previously concluded that Mignott's reliance on the crime-fraud exception to pierce this privilege presents nothing for our review, she has not established that the trial court erroneously granted summary judgment on the tortious interference claim.

To the extent Mignott asserts that the forged document was used to "defame" her, we decline to consider this argument. Mignott conceded on the record that her defamation claim was based strictly on the allegation that she threatened Segal, and the trial court analyzed the forged document solely within the context of the tortious interference claim. "[W]ithout a ruling by the trial court on [this] particular issue, there is nothing for this Court to review." *Pneumo Abex, LLC v. Long*, 357 Ga. App. 17, 29(2) (849 SE2d 746) (2020) (quotation marks omitted).

(d) Finally, to the extent Mignott broadly asserts that the court erred by granting the defendants' "untimely" motion for summary judgment because genuine issues of material fact remain, this argument fails. In support of this assertion, she generally references an affidavit filed by Perez, Segal's answer and deposition, and Mitchell's deposition testimony. However, she fails to specify what information in those documents creates issues of fact. It is not this Court's function to cull the record on a party's behalf. See *Henderson*, 304 Ga. at 739(4). Because Mignott has not shown that a triable issue exists, she has not shown that the trial court erred in granting summary judgment. See *Vick v. Tower Place*, 268 Ga. App. 108, 109–10(2) (601 SE2d

24

348) (2004) (finding summary judgment appropriate where appellant failed to cite evidence in the record giving rise to a triable issue).

*Judgment affirmed. Barnes, P. J., and Doyle, P. J., concur.*